# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

## Appeal No. 23-12110 & 23-14118

## UNITED STATES OF AMERICA,

Plaintiff/Appellee,

v.

## KEJUAN BRANDON CAMPBELL,

Defendant/Appellant.

**On Direct Appeal from the United States District Court
Southern District of Florida
Case No. 21-cr-60011-AHS**

**REPLY BRIEF FOR APPELLANT
KEJUAN BRANDON CAMPBELL**

Sheryl J. Lowenthal
Counsel for Appellant Campbell
9130 S Dadeland Blvd., Suite 1511
Miami, Florida 33156-7851
Phone: 305-670-3360
Email:  sjlowenthal@appeals.net
Florida Bar No. 163475

North Florida Office:
221 East Government Street
Pensacola, Florida 32502-6018
Phone; 850-912-6710

CRIMINAL APPEAL -  ENTITLED  TO PREFERENCE

## CERTIFICATE OF INTERESTED PERSONS

| | |
|---|---|
| Adelstein, Stuar*t* | Former Counsel for Alexander-Wilcox |
| Alexander, Ajay | Assistant United States Attorney |
| Alexander-Wilcox, Dionte | Co-Defendant/Co-Appellant |
| Berube, Robert N. | Assistant Federal Public Defender |
| Campbell, Kejuan Brandon | Defendant/Appellant |
| Cohen, Alix | Assistant United States Attorney |
| Cohn, Hon. James I. | Senior United States District Judge |
| Fajardo, Ariana Orshan | Forner United States Attorney |
| Gonzalez, Jose A. | |
| Grove, Daren | Assistant United States Attorney |
| Harris, Ha. | Victim |
| Harris, Ho. | Victim |
| Horowitz, Philip Robert | Attorney for Mr. Alexander-Wilcox |
| Hunt, Hon. Patrick M. | United States Magistrate Judge |
| James, Jr, Antonio | Co-Defendant/Co-Appellant |
| Kreiss, Jason W. | Former counsel for Mr. James |
| Lapointe, Markenzy | United States Attorney |
| Latta, Brooke | Assistant United States Attorney |

*Certificate of Interestd Persons, Cont'd*
*US v. Kejuan Campbell*

| | |
|---|---|
| Lowenthal, Sheryl J. | Appellate Counsel for Mr. Campbell |
| Matzkin, Daniel | Assistant United States Attorney |
| Mulvihill, Thomas | Assistant United States Attorney |
| Rosenberg, Gary I. | Trial Counsel for Mr. Campbell |
| Singhal, Hon. Raag | United States District Judge |
| Snow, Hon. Lurana S. | United States Magistrate Judge |
| Strauss, Hon. Jared M. | United States Magistrate Judge |
| Suntrust (STI) acquired by Truist (TFL) | Victim |
| Swartz, Kenneth M. | Counsel for Codefendant James |
| Valle, Hon. Alicia O. | United States Magistrate Judge |

*/s/ Shery J. Lowenthal*
Sheryl J. Lowenthal

## *TABLE OF CONTENTS AND CITATIONS*

*CERTIFICATE OF INTERESTED PERSONS*                    *C-1 and C-2*

*STATEMENT OF THE ISSUES*                                        *1*

*REPLY TO THE BRIEF FOR THE UNITED STATES*

### I

*The evidence was insufficient to support a conviction of armed bank robbery and the district court abused its discretion and reversibly erred in convicting Mr. Campbell for three counts of bank robbery and three related firearm counts because money was taken from an ATM outside a bank on a holiday when the bank was closed, no bank personnel were present or threatened (no tellers, employees, managers, or even janitorial staff), and funds were withdrawn from an account owned by the person who withdrew the monies; the funds were her funds, taken from her account, not from the bank's funds.*                                        *2*

### II

*The district court erred and abused its discretion in denying the motion for severance where a codefendant gave an extensive post-arrest statement to authorities, and that defendant was accused of committing a sexual assault of which Campbell was unaware when it occurred, and in which he had no involvement whatsoever, yet all defendants were prejudiced, "painted with the same brush," such that a limiting or curative instruction could not ameliorate or overcome the prejudice.*                                        *6*

### III

*The district court reversibly erred in imposing an unreasonable sentence that was procedurally and substantively greater than necessary to meet the goals and functions of sentencing.*                                        *7*

*i*

***CONCLUSION***                                                                 *17*

***CERTIFICATE OF WORD & FONT COMPLIANCE***                 18

***CERTIFICATE OF SERVICE***                                           19

### *TABLE OF CITATIONS\*

***Cases***

*Capron v. Noorder*, 6 U.S. 126 (1804)                                      6

*Cochran v. United States*, 157 U.S. 286 (1895)                       4

*Kimbrough v. United States*, 128 S.Ct. 558 (2007)              7

*Nelson v. United States*, 129 S.Ct. 890 (2009)                     15

*Rita v. United States*, 127 S.Ct. 2456 (2007)                       15

*United States v. Burton*, 425 F.3d 1008 (5th Cir. 2005)       5

*United States v. Crosby*, 397 F.3d 103 (2d Cir. 2006)         16

*United States v. Cubero*, 754 F.3d 888 (11t Cir. 2014)        7

***The United States Code***

Title 18, Section 924©                                                          2

Title 18 Section 2113                                                     2, 4, 5

Title 18, Section 3553                                                    7, 15

## *STATEMENT OF THE ISSUES*

Issue I:  The evidence was insufficient to support a conviction of armed bank robbery.  The district court abused its discretion and reversibly erred in convicting Campbell for three counts of  "bank robbery" and  three related firearm counts. Money was taken from an ATM outside a bank on a holiday.  The bank was closed, No bank personnel were threatened or even present.  Funds were withdrawn from an account owned by the person who withdrew the monies – her funds from her account, not the from the bank's funds.

Issue II:  The district court erred and abused its discretion in denying the motion for severance where a codefendant gave an extensive post-arrest statement to authorities.  That defendant was accused of committing a sexual assault of which Campbell was unaware when it occurred, and in which he had no involvement whatsoever,.  All defendants were prejudiced, "painted with the same brush," such that a  limiting or curative instruction could not ameliorate or overcome the prejudice.

Issue III: The district court reversibly erred in imposing an unreasonable sentence of 42 years in prison.  It was procedurally and substantively unreasonable and greater than necessary to meet all goals and functions of sentencing.

1

REPLY TO THE BRIEF FOR THE U NITED STATES

### *Issue I*

***The evidence was insufficient to support a conviction of bank robbery. The district court abused its discretion and reversibly erred in convicting Campbell for three counts of bank robbery and three related firearm counts because money was taken from an ATM outside a bank on a holiday . The bank was closed. No bank personnel were present or threatened and funds were withdrawn from an account owned by the person who withdrew the monies. The funds were her funds, from her account, not the bank's funds.***

As stated in the initial brief, the court reversibly erred in convicting Kejuan Campbell of bank robbery under 18 U.S.C. Section 2113 (Counts 4, 6, and 8). He is ***actually innocent of that charge***. The government failed to prove the elements of three charged federal bank robberies. As a result of actual innocence because of insufficient evidence, the bank robbery convictions and related firearm counts under 18 U.S.C. Section 924(c) (Counts 5, 7, and 9) all should be vacated. All nine convictions should be reversed, vacated, and Kejuan Campbell discharged forthwith. The Government failed to prove bank robbery. The facts fall outside the scope of the relevant criminal statutes. See, *United States v. Willis*, 844 F.3d 166, 162 (3d Cir. 2016). This may be a case of first impression in this circuit. Other circuits are split on the issue.

2

In the interest of judicial economy and to avoid unnecessary repetition Campbell adopts and incorporates by reference as though set forth in its entirety herein, the argument on Issue I in the Reply Brief filed on behalf of Co-Appellant Alexander-Wilcox, pp. 1-4.   He provides a litany of excellent, compelling reasons and examples to support the proposition that the government incorrectly charged bank robbery  The elements were not met on the facts and evidence of record.   What occurred was not bank robbery.  The government is held to its standard of proof beyond a reasonable doubt, and *no reasonable jury* would or could have reached a verdict of guilty of three  counts of bank robbery, and related firearm charges.   The jury may have been dazzled, mesmerized, or horrified by the facts and evidence presented, and likely were mistakenly persuaded that something awful occurred to the couple in their home, by masked intruders; but what occurred on those two October days did not rise  to the meet the requisite elements of federal bank robbery.

In a most literal sense "actual innocence" or a claim that the prosecution failed to prove factual guilt beyond a reasonable doubt may involve a dispute that any crime occurred at all, or that the accused was the perpetrator of a criminal act, *but not the charged criminal act*.

Actual innocence refers to a factual claim that the defendant did not commit the crime charged, or that the prosecution failed to prove guilt beyond a reasonable

doubt, and can be raised at any stage of the proceedings, including on appeal or even in collateral proceedings, even if the statute of limitations to appeal has run.

The government failed to prove all relevant elements of bank robbery. Establishing "actual innocence" after a conviction may be more difficult than winning an acquittal at trial, but Campbell was entitled to the due process rights of the presumption of innocence and holding the government to its burden of proof. The prosecution was obligated to prove guilt beyond a reasonable doubt. *See, Cochran v. United States*, 157 U.S. 286, 299 (1895). Kejuan Campbell is raising actual innocence because the offense of bank robbery was not the correct charge. This was raised and argued pretrial, during trial, and in post-trial motions.

Kejuan Campbell is actually innocent of the offense of bank robbery. Actual innocence is applicable when a defendant did not commit the crime(s) of which he was accused, and should be applied by appellate courts to prevent a grave miscarriage of justice.

Evidence showed that the three alleged bank robberies occurred on the same day within a relatively short period of time, at three separate locations of SunTrust Bank in Broward County, Florida (in Pembroke Pines, Miramar, and Davie).

Bank robbery under 18 U.S.C. Section 2113(a) is defined as taking or attempting to take by force and violence, or by intimidation, from the person or

4

presence of another, or obtaining or attempting to obtain by extortion any property or money or any thing of value belonging to, or in the care, custody control, management, or possession of a bank, credit union or savings and loan association.

The federal bank robbery charge prohibits "tak[ing], from the person or presence of another, … money… belonging to, or in the care, custody control, management or possession of any bank." 18 U.S.C. Section 2113(a).

There was no evidence that Campbell robbed a bank or attempted to rob a bank. The indictment alleged that that he forced a person who has a bank account and a debit card to withdraw money from an ATM. Will that support a conviction of federal bank robbery? In 2005, the Fifth Circuit held in *United States v. Burton*, 425 F.3d 1008, 1010 (5th Cir. 2005), that those facts it did not support a conviction. In spite of the coerced nature of the withdrawal, the funds were no longer in the custody of the bank at the time of the transfer to the defendant. This was not bank robbery. The statute reaches only the taking of money that is in the possession of a bank, not in the possession of a bank customer. Two other circuits (the Seventh and the Tenth) have held otherwise.

There was no factual basis to conclude that the money that Campbell had the wife give to him, obtained from the ATM machine "belonged to" the bank. The bank

5

The money belonged to the customer, not the bank, which is the essential element of bank robbery .

Campbell also maintains that the court lacked subject matter jurisdiction because there was no bank robbery committed.  In *Capron v. Noorder*, 6 U.S. 126 (1804), the Supreme Court established that federal courts are courts of limited jurisdiction.  Jurisdiction must be established in the pleadings.  A judgment is void if the court lacked subject matter jurisdiction, even if it is not raised until a later stage of the proceedings such as on direct appeal.

## *Issue II*

***The district court erred and abused its discretion in denying Campbell's motion for severance where a codefendant gave an extensive post-arrest statement to authorities, and that same defendant was accused of committing a serious, heinous offense of which Mr. Campbell was unaware when it occurred, and in which he had no involvement whatsoever, yet all three defendants were prejudiced, "painted with the same brush," such that the limiting or curative instruction could not ameliorate or overcome the prejudice.***

Appellant Kejuan Campbell adopts and incorporates by reference as though set forth in its entirety herein, this issue that is raised and argued in the brief of co-appellant Antonio James, Jr.  at pages 34 to 47 of his initial brief.  The issue has been fully briefed.  Adopting it will inure to the benefit of judicial economy and avoiding unnecessary repetition.

6

*Issue 3*

**The district court reversibly erred in imposing a sentence of 42 years, overruling Campbell's objections to the PSR, and not giving sufficient consideration to mitigating factors set forth in the sentencing memorandum, and the objections to the PSR imposing a sentence of 42 years in prison.**

In Kejuan Campbell's initial brief, we argue that the sentence of 42 years in prison is excessive and unreasonable.   The 18 U.S.C. Section 3553(a) factors direct the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant.    The statute requires the court to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant and to provide the defendant with necessary educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. Section 3553(a)(2).  It also requires the court to consider the kinds of sentencing and the range established by the Sentencing Guidelines.   There is a need to avoid unwarranted sentencing disparities, and to provide restitution to victims.  *United States v. Cubero*, 754 F.3d 888 n.2 (11th Cir. 2014).    Section 3553 also contains an overarching provision instructing courts to impose a sentence sufficient but not greater than necessary to achieve goals of sentencing.  *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007).

7

Four decades ago, prior to the enactment of the United States Sentencing Guidelines, federal judges had broad discretion to fashion appropriate sentences for each individual defendant who appeared before the court, based on numerous factors such as the facts and circumstances of record, including the nature and the details of the case and the specific characteristics, qualities, and needs of a particular defendant, and the need for a fair and reasonable sentence.

An excellent and illustrative example of a recent sentencing in which a Georgia state court exercised its broad discretion in a multi-defendant serious high-profile case, focusing on the defendant, his personal situation, and the need for serious punishment and yet applying compassion and consideration in the unique sentence that was imposed.

Appellant refers to the creative sentence imposed in Atlanta in the case of rapper "Young Thug" (Jeffery Lamar Williams), that is instructive as an example of a reasonable and individual defendant-based sentence in a serious, highly publicized case. This is the case that made other news. Young Thug's defense attorney was held in contempt and ultimately avoided 10 weekends in jail as the Georgia High Court put the order of contempt on hold.

8

An article in the Los Angeles Times on October 31, 2024, authored by Kate Brumback, and entitled "Young Thug Pleads Guilty To Charges, Is Sentenced In Long And Winding Racketeering Case," reports that a rapper named "Young Thug pleaded guilty to gang, drug, and gun charges in Atlanta and will be released from jail, though he could be put back behind bars if he violates the terms of his sentence."

We note that Young Thug's RICO trial had commenced, but that he decided to enter a guilty before the trial was completed, and before a jury verdict was rendered. The article states that according to the lead prosecutor "[t]he 33-year old Grammy-winning artist, whose given mane is Jeffery Lamar Williams, entered his pleas without reaching a deal with prosecutors after negotiations between the two sides broke down." That left the sentence completely up to Fulton County Superior Court Judge Paige Reese Whitaker.

The record showed that Young Thug pleaded guilty to one gang charge, three drug charges, and two gun charges; and also pleaded no contest on another gang charge and a racketeering conspiracy charge (which meant that he decided not to contest those charges but can be punished for them as if he had pleaded guilty).

The case presented the interesting question of whether Young Thug's lyrics could be used against him. The prosecutors' position was that in a RICO case against a rapper, the answer was YES.

The article continues that the judge imposed a sentence of 40 years with the first five to be served in prison, but was commuted to time served, followed by 15 years on probation.  If he successfully completes the term of probation without any violations, another 20 years will be commuted to time served.  But if he violates the conditions he will be required  to serve those 20 years in prison.

As part of his punishment, Young Thug is required to stay away from the Metro-Atlanta area for the first 10 years of his probation with exceptions only for weddings, funerals, graduations, or serious illness of family members, the judge ruled.

According to the article, the judge also ordered Young Thug to return to the Atlanta area four times a year during his probation to make a live anti-gang, anti-gun-violence presentation at a school or a community organization serving children. The judge said that will count toward the 100 hours of community service she ordered him to perform each year during the term of probation.

Additionally, he is not allowed to associate with gang members or with the victims or other defendants in the case, with the exception of his brother and a  rapper named Gunna, with whom Young Thug has contractual obligations.  And he cannot promote any criminal street gang or gang activity and cannot use hand signs or terminology that promote a street gang.  Furthermore, he must submit to random

10

drug screens and not possess or gun, although he is allowed to travel within the United States and internationally for work, even while on probation.

The prosecutor outlined for the court the evidence she would have presented to prove Young Thug's guilt, including some of his rap lyrics.   She asked the judge to impose a sentence of 45 years with 25 years in prison and the remaining 20 years on probation.

Young Thug's lead attorney, Brian Steel, said they "vehemently disagree[d]" with many of the prosecutor's statements, and that it was "offensive" that the state was using the rapper's lyrics against him.   Attorney Steel said the evidence against his client was weak.   He accused prosecutors of misrepresenting and hiding evidence, and maintained that Young Thug was "falsely accused."   Defense counsel said he advised his client that in his considered judgment, they were winning the trial and should continue through a jury verdict.  But Young Thug told Attorney Steel that he could "not wait another three months if there is any possibility I could go home, because I have children that are hurting.  I have things to do."

Attorney Steel requested  a sentence of 45 years with five years in prison, commuted to time served and 40 years on probation.    In his allocution to the court, Young Thug requested that the judge let him go home, saying he would never be in a similar situation again:  "I've learned from my mistakes, you know.  I come from

11

nothing and I've made something and I didn't take full advantage of it. I'm sorry," he said.

The judge said that she appreciated that he realized the impact that he has on people worldwide. She said rap music may involve a lot of posturing but that children will emulate some of the dangerous behavior mentioned in rap songs. She encouraged Young Thug to use his talent and influence to encourage kids to do the right thing. "I want you to try to be more of the solution and less of the problem."

As a tremendously successful rapper, Young Thug started his own record label, "Young Stoner Life" (YSL). Prosecutors said that he also co-founded a violent criminal street gang; and that YSL stands for Young Slime Life, the gang's real name. [This may come as a huge shock, surprise, and disappointment to the French fashion house founded by the late Yves St. Laurent, the upscale fashion designer also known as YSL].

Young Thug had been charged two years earlier in what was described in this LA Times article, as

> …a sprawling indictment accusing him and more than two dozen others of conspiring to violate Georgia's anti-racketeering or RICO law. He also was charged with gang, drug, and gun crimes.

The rapper entered his plea nearly a year after prosecutors began presenting evidence. Since then, the high-profile trial faced several interruptions and delays,

including the online  leak of a juror's identity, a defendant's stabbing in the Fulton County Jail, and several different judges being assigned to oversee the trial.   The trial of six defendants began with opening statements in November 2023.  As  of October 2024, prosecutors had called dozens of witnesses.

With his pleas, Young Thug (a/k/a Williams) joined three co-defendants who pleaded after reaching deals with prosecutors.   The fates of the other two co-defendants remained undecided as of the October 2024 article referenced herein.

Nine defendants charged in the indictment accepted plea deals before the trial commenced.   Twelve others were tried separately.    Prosecutors dropped charges against one defendant after he was convicted of murder in an unrelated case.

In 2023, Young Thug already charged in the RICO case, was accused  of a "hand-to-hand  drug exchange" in court.   As an Atlanta native, Young Thug began his hip-hop career in 2010.    Known for hits such as "Best Friend and "Floyd Mayweather," Young Thug helped elevate the Atlanta rap scene as he collected Grammy nominations and MTV Video Music awards and performed at high -profile events including the BET Awards and Coachella Music Festival.

In spite of being jailed in Georgia since his arrest in 2022, Young Thug continued to release music, including a 2023 album "Business is Business" and more

13

recent songs with rap artists Ye (formerly Kanye West), Ty DollaSign, and 21 Savage.

Epilogue: after Young Thug entered his guilty plea, the RICO trial ended in or around December 2024, with **two defendants found not guilty of murder**. One YSL gang and racketeering defendant (Yak Gotti) was stabbed in jail (early December 2024).

The foregoing description of Young Thug's charges, guilty plea, and the creative sentence that was imposed, show a court exercising its broad discretion in imposing a sentence tailored to a specific individual. She imposed a sentence of over 40 years, but then ordered that a significant portion of those years be commuted to a reasonable term of incarceration to be followed by a very lengthy term of probation with extremely harsh and strict terms, but that would permit the defendant, a successful rap artist, to continue his career, and to remain out of prison on probation for most of his sentence so long as he did not violate the terms set by the Court.

Kejuan Brandon Campbell was on his way to a successful career in the music business and as a rap artist, and could and should have been given similar opportunities to be punished severely, but with some reasonableness and compassion, and an opportunity to serve a reasonable term in the custody of the US

Bureau of Prisons, and then to be placed on long-term probation with strict conditions and limitations, that would at least permit him to live a life outside prison and to continue to pursue his career, closely supervised, but not being incarcerated for so long that he would have no hope for a real life until his release when he is a senior citizen.  At that point, he  would have very limited options for becoming a productive member of society, with nothing to look forward to.  His life would be ruined, lost, hopeless..  Warehousing human beings for unimaginably long prison terms is cruel and inhumane.  This  young man was close to realizing his dream of becoming a success in the music business.  He made a mistake.  He deserves some punishment, but tempered with some hope for a future.  Now he is just another lost soul warehoused in the custody of the Bureau of prisons literally for more than four decades.

Sentencing judges should independently evaluate appropriate sentences not only considering the purposes and factors of 3553(a) but also in consideration of arguments that the Guideines sentence itself fails to properly reflect the 3553(a) considerations. *Rita, v. United States*, 127 S.Ct. 2456, 2465 (2007).   In evaluating such arguments the court does not enjoy the legal presumptions that the guidelines sentence should apply. *Nelson v. United States,* 129 S.Ct. 890, 892 (2009), reversing

15

the Fourth Circuit ruling that within-guidelines sentences are presumptively reasonable. Courts, once again, have increased discretion in sentencing defendants and can substantially achieve somewhat more individualized justice. *See, United States v. Crosby*, 397 F.3d 103, 114 (2d Cir. 2005).

In his sentencing memorandum Campbell informed the Court that he was just 27 years old when the events took place. He had limited criminal history. His only contact with law enforcement was in 2017, age 23, grand theft, use of personal identification and possession of a false driver's license.

Kejuan Campbell and codefendant Antonio James Jr. are first cousins. James' mother and Campbell's mother are twin sisters, and Kejuan and his cousin are about one year apart in age. To say that they are close is an understatement. Campbell and James collaborated on writing music and performed together. Campbell began his music career when he was 14 years old. He participated in concerts in Texas, Miami, Orlando and along the East Coast from South Florida to Boston. At age 25, about a year before this incident he was on the verge of signing a contact with a major record label. His music had streamed on you-tube since he was 18years old (see sentencing memorandum, DE-311 page 3).

16

There are numerous reasons set forth in Campbell's initial brief  at pages 35-37 why a creative sentence similar to the one imposed by Judge Whitaker in the Young Thug case in Georgia, would be a far better way to punish Kejuan Campbell, than more than 40 years of incarceration which is excessive and draconian.


CONCLUSION

Appellant respectfully prays that this Honorable Court will reverse and vacate the convictions for bank robbery and for the related firearms offenses and will order that Campbell be discharged for the government's failure to prove bank robbery beyond a reasonable doubt  based on the facts and the record that no bank was robbed and that in fact, the bank was closed, and the money was received from an ATM by the account owner who then gave the money to Campbell;

that the Court will reverse the district court's denial of the motion for severance where the confession of one codefendant and his actions were overwhelmingly prejudicial to Campbell such that limiting and curative instructions could not erase the *Bruton* problem, or overcome the prejudice visited upon Campbell from the sexual misconduct of a codefendant;

17

and finally Campbell received an unreasonably and  unnecessarily lengthy prison sentence. He is a young man with children and a promising music career.  This sentence of 42 years in prison strips him of all hope for his future until he will be in his 60's.  The sentence should be vacated and the cause remanded for imposition of a more reasonable sentence that meets all of the 3553(a) sentencing goals and factors but will also allow him to have a real life outside of prison after he has been sufficiently punished with a reasonable prison term and a lengthy term of supervised release with conditions.

### *CERTIFICATE OF COMPLIANCE WITH TYPE SIZE and STYLE, and WORD COUNT*

I certify that this brief is prepared in Word for Windows in Times New Roman 14-Point Font, and that according to the Word program, the relevant portions of the brief contain no more than 3979  words.

18

### *CERTIFICATE OF COMPLIANCE WITH ECF & SERVICE*

I CERTIFY that the foregoing reply brief was electronically filed with the Clerk of Court on March 17, 2025, *via* the CM-ECF system, which will send notification and a copy of this brief to all counsel of record; four bound copies in paper will be prepared and mailed to the Clerk ot Court, and a copy will be mailed to Kejuan Campbell c/o USP-1, Coleman, Florida.

Respectfully submitted,

*/s/ Sheryl J. Lowenthal*
Sheryl J. Lowenthal, Attorney at Law
9130 S Dadeland Blvd. Suite 1511
Miami, Florida 33156-7851
Ph:  305-670-3360
Florida Bar No. 163475